# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAUL EVAN SEELIG,          )
                           )
    Plaintiff,        )
                           )
v.                         )          1:16CV1166
                           )
FRANK L. PERRY, et al.,    )
                           )
    Defendants.       )
                           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Dr. Gregory D. Haynes's ("Defendant Haynes") motion to dismiss for failure to state a claim. (Docket Entry 39.) Also before the Court is Defendants Dr. Olushola Metiko ("Defendant Metiko"), Physician Assistant Anne V. Christopher ("Defendant Christopher"), and Nurse Honey Siao's ("Defendant Siao") motion for summary judgment solely addressing Plaintiff's failure to exhaust available administrative remedies and motion to dismiss Plaintiff's complaint. (Docket Entry 46.) For the reasons that follow, the Court will recommend granting Defendant Haynes's motion to dismiss for failure to state a claim and Defendants Metiko, Christopher, Siao's motion for summary judgment and motion to dismiss. (Docket Entries 39, 46.)

## I. FACTUAL BACKGROUND

Plaintiff, a *pro se* inmate, filed this action on September 22, 2016, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical need while in the custody of the North Carolina Department of Public Safety ("N.C.D.P.S."). (*See generally* Complaint, Docket

Entry 2.) Specifically, Plaintiff first alleges that on March 30, 2015, while housed at Alexander Correctional Institution ("ACI"), he began experiencing chest, left arm, and shoulder blade pain. (*Id.* at 9.) According to Plaintiff, he knew this pain was related to his previous diagnosis of cardiac heart disease. (*Id.*)

Next, on April 17, 2015, Plaintiff was transferred to Randolph Correctional Institution ("RCI") medical center. (*Id.* at 13.) Then, on April 22, 2015, Plaintiff began experiencing excruciating pain throughout his extremities. (*Id.* at 14.) That same day, Plaintiff was taken into the examination room and examined by Defendant Haynes. (*Id.* at 15-16.) Defendant Haynes diagnosed Plaintiff as suffering from arthritis in his chest and not cardiac arrest. (*Id.* at 16.) According to Plaintiff, Defendant Haynes made an attempt to administer an unfamiliar medication, but before he could do so, Plaintiff inquired as to the medication he was providing him and Defendant Haynes answered "Torydal[.]" (*Id.* at 16-17.) Plaintiff then explained "Tordayl" sends him into cardiac arrest and strongly advised Defendant Haynes to review his medical files. (*Id.* at 16-17.) Defendant Haynes next looked worried and instructed Nurse Gray to administer the Electrocardiogram ("EKG") test. (*Id.* at 17.) Plaintiff alleges that Nurse Gray did not know how to use the EKG equipment, and Defendant Haynes then instructed her to call the ambulance. (*Id.* at 18.) Once emergency medical services ("EMS") arrived, they questioned Nurse Gray and Defendant Haynes as to why EMS was not called immediately. (*Id.*) Further, EMS applied CPR and shock pads upon Plaintiff in order to revive him and transported him to High Point Regional Hospital ("HPRH"). (*Id.* at 19-20.)

Thereafter, on December 8, 2015, while at RCI Plaintiff began experiencing "G.I. bleeding" and went to receive medicine from Nurse Nichols, who consulted with Defendant

Haynes and issued blood thinner medication. (*Id.* at 30.) Further, due to Plaintiff's profuse bleeding, he was transferred to Randolph Hospital. (*Id.* at 31.)

The complaint further alleges that on February 4, 2016, Plaintiff spoke with Defendant Metiko, a Medical Director at Central Prison ("CP") Regional Medical Center. (*Id.* at 42.) Plaintiff and Defendant Metiko discussed Plaintiff's need to get to the "U.N.C. Chapel Hill Heart Failure Clinic" because "the left ventrical [sic] assist system to bridge [him] over to heart transplant[.]" (*Id.*) Defendant Metiko told Plaintiff "he would look into it". (*Id.*) After speaking with Defendant Metiko on February 11, 2016, Plaintiff concluded that Defendant Metiko was procrastinating in regards to his medical investigation. (*Id.* at 42-43.) On February 18, 2016, Plaintiff again spoke with Defendant Metiko, and he indicated that "he was not there to improve [Plaintiff's] health, but to save the State of North Carolina money on health care." (*Id.* at 43.) Also, Defendant Metiko indicated that he was there to ensure "[h]e received his "bonus" for saving the prison system['s] money." (*Id.*) Plaintiff further claims that under the supervision of Dr. Metiko, Plaintiff only received the recommendation to stay in bed for a week. (*Id.*)

Plaintiff also alleges that on August 5, 2016, he was transferred to CP Regional Medical Center urgent care where he met Defendant Christopher. (*Id.* at 49.) Plaintiff states that Defendant Christopher spent approximately two minutes with him and told him that he would not be receiving a heart transplant, "nor get to U.N.C. Heart Failure Clinic." (*Id.*) Further, on August 8, 2016, Defendant Christopher rewrote "without consultation" how Plaintiff takes his medication and "how they are given[.]" (*Id.* at 49-50.)

On August 9, 2016, Plaintiff was seen by Defendant Metiko who told Plaintiff he would be "staying at Central Prison Regional Medical Center locked-up 24 hours a day, 7 days a week" because he was "costing Randolph Correctional Center to [sic] much money[.]" (*Id.* at 50.)

> On 11th August, 2016, I saw P.A. Christopher for 2 minutes and nothing has been done. On 16th August, 2016, saw Dr. Meteko [sic] who did not do anything. (Rounds only) On 23rd August, 2016, saw Dr. Meteko [sic], and again nothing has been done. (Rounds only)

(*Id.* at 51.)

Then, on August 26, 2016, during Plaintiff's examination, Defendant Christopher told Plaintiff she had "issued [a] walking order, since lying in bed" for a month was terrible for his health. (*Id.* at 51.) Plaintiff was examined by Defendant Metiko again on August 30, 2016, and Plaintiff alleged that Defendant Metiko seemed concerned after speaking with Dr. Paul Smith. (*Id.*) Specifically, Plaintiff spoke with Defendant Metiko about how lying in bed has exacerbated Plaintiff's medical issues and Defendant Metiko responded that he would have an Orthopedist examine Plaintiff, but heart surgery may not be an option. (*Id.*) Plaintiff then claims he has been "locked up 24 hour[s] a day, 7 days a week and have [sic] not seen a cardiologist, [at] U.N.C. Heart Failure Clinic." (*Id.*)

## II. <u>PROCEDURAL BACKGROUND</u>

On September 22, 2016, Plaintiff filed a complaint against Defendants, pursuant to 42 U.S.C. § 1983. (*See generally* Complaint, Docket Entry 2; Docket Entry 3.) On March 13, 2017, Defendant Haynes filed a motion to dismiss for failure to state a claim. (Docket Entry 39.) On March 17, 2017, Defendants Christopher, Metiko, and Siao filed a motion for summary judgment solely addressing Plaintiff's failure to exhaust available administrative remedies and

motion to dismiss Plaintiff's complaint. (Docket Entry 46.) On March 17, 2017, Defendants Christopher, Metiko, and Siao filed an answer to Plaintiff's complaint. (Docket Entry 48.) On June 21, 2017, Plaintiff filed a response to Defendants' motion to dismiss and motion for summary judgment. (Docket Entry 52 referencing 39, 46.)

On July 17, 2017, Defendants Metiko, Christopher, and Siao filed a reply in support of their motion for summary judgment solely addressing Plaintiff's failure to exhaust available administrative remedies and motion to dismiss Plaintiff's complaint. (Docket Entry 55.) That same day, Defendants filed an affidavit in support of their motion for summary judgment. (Docket Entry 56 referencing 46.)

## III. DISCUSSION

### A. Motion to Dismiss

### Standard of Review

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations

and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## Analysis

### North Carolina Rule of Civil Procedure 9(j)

Defendant Haynes has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 39.) This motion is partially predicated on Plaintiff's failure to meet the mandatory pre-filing certification requirements of Rule 9(j) of the North Carolina General Statutes 1A–1, Rule 9(j). (Docket Entry 40 at 5-10.)

In North Carolina, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j) which requires a plaintiff to include in his complaint an assertion that that an expert in the same field reviewed the medical care at issue and is willing

to testify that the medical care did not comply with the applicable standard of care. *Simmons v. Shelton*, 1:13CV566, 2015 WL 2345593, at *4 (M.D.N.C. May 14, 2015); *See* N.C. R. Civ. P. 9(j). Failure to comply with Rule 9(j) is grounds for dismissal. *See Littlepaige v. United States*, 528 Fed. App'x 289, 292 (4th Cir. 2013) (unpublished) (finding in a Federal Tort Claims Act case, "that, where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."); *Boula v. United States*, 1:11cv366, 2013 WL 5962935, at *2 (M.D.N.C. Nov. 7, 2013); *Moore v. Pitt Cnty Mem. Hosp.*, 139 F.Supp.2d 712, 713–14 (E.D.N.C.2001). The only exception to this rule is where "[t]he pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*." Rule 9(j)(3). More specifically, pursuant to N.C. Gen. Stat. § 90-21. 11(2)a, complaint that alleges medical malpractice shall be dismissed unless:

> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care; (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint[1]; or (3) The pleading alleges facts establishing

---

[1] In *Morris v. Se. Orthopedics Sports Med. & Shoulder Ctr., P.A.*, the Court stated following:

> In a medical malpractice action as defined in G.S. 90–21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90–21.12 unless the person is a licensed health

negligence under the existing common-law doctrine of *res ipsa loquitur*.

*Moore v. Cent. Carolina Surgical Eye Associates, P.A.*, 4:12-CV-00015, 2013 WL 1123850, at *3

(W.D. Va. Mar. 15, 2013)

Here, Plaintiff is challenging the medical care he received while at RCI. In addition,

Plaintiff proffers himself as the medical expert based on the following qualifications:

---

care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

199 N.C. App. 425, 439, 681 S.E.2d 840, 849–50 (2009) (citing N.C. Gen. Stat. § 8C–1, Rule 702(b) (2007)).

(1) Trained in basic and advanced first aid; (2) Emergency Medical Technician assigned to Pacific Coast Search and Rescue Team for approximately (6) years; (3) Instructor in cardiopulinary [sic] resuscitation certified by the American Red Cross; (4) Taught numerous law enforcement agencies, hospitals, nursing homes, Boy Scouts or America, etc. . in cardiopulminary [sic] resuscitation; (5) Have qualified and testified in cases with respect to emergency protocols and standard of care in cardiopulminary resuscitation and cardiac heart disease; (6) Familiar with cardiac protocols and standard of care; (7) Familiar with medications associated with cardiac heart disease and the drug interactions between them; (8) Continue to monitor and receive regular updates from the American Heart Association, regarding advancement in left ventricle assist systems; heart transplants, and cardiac heart disease.

(Docket Entry 2 at 81-82.)

Moreover, Plaintiff has failed to make the necessary certification, thus dismissal is warranted. *Moore*, 2013 WL 1123850, at \*3. Further, Plaintiff failed to acquire a medical expert to review the medical report and records pertaining to his allegations. *Moore*, 2013 WL 1123850, at \*3. Specifically, Plaintiff does not "specialize in the same specialty" as Defendant Haynes, a board certified internal medicine physician. *Morris*, 199 N.C. App. at 439. In order for Plaintiff to qualify as an expert, he must have been teaching at an accredited school or been practicing as an internal medicine physician in the previous year. (*Id.*) However, based on Plaintiff's own allegations, he was located in various prisons, during the course of the previous years, thus he meets neither qualification. (*See generally* Complaint, Docket Entry 2.) In addition, his *pro se* prisoner status does not excuse his obligation to comply with Rule 9(j)'s certification requirements. *See e.g., Smith v. United States,* No. 1:08CV838 (LO/JFA), 2010 WL 256595, at \*3 (E.D. Va. Jan. 19, 2010) (unpublished) (citations and quotations omitted) ("It has been held in several occasions that federal inmates proceeding *pro se* under the FTCA are

not exempt from the certificate of merit requirement, despite the fact that his or her prisoner status adds hurdles to any attempt to obtain an expert."). In conclusion, Plaintiff has presented no evidence for the Court to qualify him as an expert, thus he has failed to provide a Rule 9(j) certification. Moreover, none of Plaintiff's listed certifications or qualifications make him a proper expert under North Carolina Civil Procedural Rule 9(j).

## Res Ipsa Loquitur

Plaintiff alleges that Defendant Haynes postponed addressing Plaintiff's pain in his chest, shoulder, and right arm. (Docket Entry 2 at 16.) In addition, Plaintiff alleges that Defendant Haynes misdiagnosed Plaintiff with arthritis in his chest, tried to administer medication that Plaintiff was allergic to, and was unable to operate the EKG machine, which led to heart damage. (*Id.* at 16-19.) When Plaintiff argues that his personal injuries were directly caused by inadequate medical care received "the doctrine of *res ipsa loquitur* does not apply." *Lauer v. United States*, 1:12CV41, 2013 WL 566124, at *5 (W.D.N.C. Feb. 13, 2013); *see also Alston v. Granville Health Sys.*, 221 N.C. App. 416, 419 (2012). Therefore, when evidence is put forth "that shows the cause of the injury, the doctrine" is not applicable. *Lauer*, 2013 WL 566124, at *5. Thus, Plaintiff's assertion of *res ipsa loquitur* lacks merit. Thus, to the extent Plaintiff asserts a claim for medical malpractice against Defendant Haynes, the motion to dismiss should be granted.

## Deliberate Indifference

As Defendant Haynes correctly asserts, Plaintiff has failed to state a claim of deliberate indifference. (Docket Entry 40 at 15-18.) Plaintiff alleges that Defendant Haynes was deliberately indifferent to Plaintiff's medical needs by the following conduct:

> (1) Exercising deliberate indifference to his serious medical needs; (2) for failure to supply and administor [sic] comprehensive healthcare equivalent to that available in the community (N.C.D.P.S. Policy); (3) failure to follow doctors orders; and (4) continued failure to administor [sic] healthcare equivalent in the community (placing him in a 24 hour a day, 7 days a week lock-down for being sick. Forcing him to lie-in-bed which has now created other serious medical conditions which they are also failing to address).

(Docket Entry 2 at 64.)

It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Lilly*, 2017 WL 3017704, at *3. ; *see also Estette v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official action must have recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citations omitted) (emphasis in original). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citation omitted).

To constitute deliberate indifference to a serious medical need, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Thus, "mere

negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmates proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). It is well settled, therefore, that a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer v. Brennan*, 511 U.S. 825, 832–33, (1994). Further, the refusal by a medical professional to give an inmate any prescribed pain medication can, in some instances, amount to deliberate indifference. *Carter v. Ulep*, No. 1:13CV1425 LMB/JFA, 2014 WL 3421515, at *3 (E.D. Va. July 10, 2014) (citation omitted), dismissed, 585 Fed. Appx. 46 (4th Cir. 2014) (unpublished). However, misdiagnosing an inmate's injury does not render the physician deliberately indifferent towards the inmate. *Bridges v. Keller*, 519 Fed. Appx. 786, 787 (4th Cir. 2013).

In this case, Plaintiff's own allegations provide support for the denial of his deliberate indifference claim. His allegations indicate that Defendant Haynes was highly responsive upon learning of Plaintiff's condition. First, Defendant Haynes tried to administer "Torydal" to Plaintiff. (Docket Entry 2 at 17.) Upon Defendant Haynes learning of Plaintiff's allergies to "Tordayl[,]" Defendant ceased from providing the medication. (*Id.*) Then, Plaintiff stated that he suffered from cardiac heart disease, and Defendant Haynes looked worried. (*Id.*) At most, Defendant Haynes's reaction to Plaintiff's statement infers the lack of knowledge to Plaintiff's condition. (*Id.*); *Parrish ex rel. Lee*, 372 F.3d at 303.

Additionally, Plaintiff's allegations indicate that Defendant Haynes approved Warfarin to help treat Plaintiff's heart condition. (Docket Entry 2 at 30.) However, the Warfarin allegedly caused "G.I. bleeding" for Plaintiff and led to the need for a thoracic left ventricular assist system ("LVAS"). (Docket Entry 2 at 30-31.) Moreover, Plaintiff's allegations of Defendant's failure to properly diagnose Plaintiff does not amount to deliberate indifference. *Bridges*, 519 Fed. Appx. at 787; *see Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (The doctor was not found deliberately indifferent when he was negligent when treating the prisoner's back injury.); *see also Lilly*, 2017 WL 3017704, at *5. Last, Plaintiff's remaining claims against Defendant Haynes do not allege an injury, thus Plaintiff's claim for deliberate indifference is recommended to be dismissed. *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993).

## B. Motion for Summary Judgment Solely Addressing Plaintiff's Failure to Exhaust Available Administrative Remedies

Defendants Metiko, Christopher, and Siao have moved for summary judgment in this matter. (*See generally*, Docket Entry 46.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Bynum v. Poole*, 1:15CV960, 2017 WL 3578698, at *1 (M.D.N.C. Aug. 17, 2017); *see also Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless

there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248–49.

## Analysis

### Failure to Exhaust Available Administrative Remedies

Defendants Metiko, Christopher, and Siao assert that Plaintiff failed to exhaust his administrative remedies prior to bringing this action. (Docket Entry 49 at 3-6.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-

settled that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90–91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676–77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

Further, the North Carolina Department of Corrections ("DOC") has a three-step Administrative Remedy Procedure ("ARP") which governs the filing of grievances in each of its correctional facilities.[2] *Murray*, 2013 WL 3326661, at *2; *See also e.g., Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008). The ARP first encourages inmates to attempt informal communication with responsible officials at the facility where the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that "any aggrieved inmate may submit a written grievance . . . ." *Id.* § .0310(a)(1). Additionally, the grievance must "contain language sufficient to put defendants on notice" of the constitutional violation. *Hamilton v. Daniels*, 5:13-CT-3048-FL, 2013 WL 6795008, at *3 (E.D.N.C. Dec. 20, 2013) (The Court found that Plaintiff's grievance failed to put prison officials on notice because it lacked information pertaining to Plaintiff's need for a safety helmet, wheelchair, or assistance from an orderly.); *see also Holley v. Shirley*, 1:11CV508 GBL/JFA, 2012 WL 9702529, at *2 (E.D. Va. Nov. 19, 2012), *aff'd*, 521 Fed. Appx. 176 (4th Cir. 2013). If the inmate is not satisfied with the decision reached at the above-described step one of the grievance process, he or she may request relief from the facility head. ARP § .0310(b)(1). If the inmate is not satisfied with the

---

[2] The court takes judicial notice of this established procedure of the Department of Correction as a matter of public record. Fed. R. Evid. 201(1). *Murray v. Dobyns*, 1:12CV214, 2013 WL 3326661, at *2 (M.D.N.C. July 1, 2013).

decision reached at the above-described step two of the grievance process, he or she may appeal to the secretary of correction through the inmate grievance examiner (IGE). *Id.* § .0310(c)(1). The decision by the IGE or a modification by the secretary of correction shall constitute the final step of the Administrative Remedy Procedure. *Id.* § .0310(c)(6).

A review of the documents attached to Plaintiff's complaint supports the conclusion that he has not exhausted his administrative remedies. That is, the DOC grievance procedure is comprised of three distinct steps. Regarding Defendants Metiko and Christopher, Plaintiff has produced sufficient evidence that he engaged in step one and two of the grievance process. However, Plaintiff has not produced evidence of his completion of step three appeals.

Moreover, the records of the Inmate Grievance Resolution Board ("IGRB") indicate that between January 1, 2015, and September 2016, IGRB received thirteen step three appeals from Plaintiff. (Couch Aff. ¶ 4, Ex. A-M.) Specifically, four of the step three appeals concern incidents arising out of Alexander Correctional Institution and also Plaintiff complains about unrelated issues such as not receiving certain medication. (Ex. A, Grievance No. 4870-B-14-582; Ex. B, Grievance No. 4870-B-15-023; Ex. C, Grievance No. 4870-M-15-074; Ex. D, Grievance No. 4870-H-15-114.) Additionally, seven of the step three appeals involve matters at RCI predominantly about the conduct of Officer Moffitt. (*Id.* at Ex. G, Grievance No. 4445-2015-EDM-00130; Ex. H, Grievance No. 4445-2016-EDM-0005; Ex. I, Grievance No. 4445-2016-CDM-01275; Ex. J, Grievance No. 4445-2016-CDM-01282; Ex. K, Grievance No. 4445-2016-CDM-01285; Ex. L, Grievance No. 4445-2016-FDM-01309; Ex. M, Grievance No. 4445-2016-FDM-001329.) These seven step 3 appeals do not at all pertain to Defendants Metiko and Christopher. As to the two step three appeals pertaining to incidents while at CP

Regional Medical Center, Plaintiff has still failed to notify prison officials as to Defendants alleged conduct. (Ex. E, Unit Grievance No 3100-15-0730; Ex. F, Unit Grievance No. 3100-15-0987.)

*Defendant Christopher*

In this case, Plaintiff was seen by Defendant Christopher on August 5, 2016, at CP. (Docket Entry 2 at 49.) However, Plaintiff's two step three appeals from CP were filed in August 23, 2015, and June 23, 2015, eleven months before he alleges meeting with Defendant Christopher. (Ex. E, Unit Grievance No 3100-15-0730; Ex. F, Unit Grievance No. 3100-15-0987; Docket Entry 2 at 49.) According to Plaintiff, Defendant Christopher, without proper authority, re-wrote his medication regimen, and communicated to Plaintiff that he would not be receiving a heart transplant. (*Id.* at 49.) Within both of Plaintiff's grievances, he addressed his treatment at CP, but does not discuss either issue, thus failing to provide adequate notification. *Hamilton*, 5:13-CT-3048-FL, 2013 at *3.

*Defendant Metiko*

As to Defendant Metiko, Plaintiff saw him on February 4, 2016 at CP. (Docket Entry 2 at 42.) Plaintiff filed his grievance stating "inmates are locked down 24 hours a day, 7 days a week and do not have access to the mailbox. Inmates rely on staff to mail everything." (Ex. E, Unit Grievance No 3100-15-0730.) However, Plaintiff's allegations toward Defendant Metiko pertain to his inability to fully recover due to his confinement. (Docket Entry 2 at 43.) Despite the fact that Plaintiff's grievances relate to his medical condition, they do not contain language that sufficiently puts the prison on notice that Plaintiff required mobility for his medical condition. *Hamilton*, 5:13-CT-3048-FL, 2013 at *3; *see also Jones*, 127 S. Ct. at 923

(stating that the primary intent of exhaustion requirement is to allow prison officials the opportunity to address complaints before inmates initiate lawsuits.) In addition, Plaintiff's grievance dated June 23, 2015, was seven months before he alleges being seen by Defendant Metiko, on February 4, 2016. (Ex. E, Unit Grievance No 3100-15-0730; Docket Entry 2 at 43.) Moreover, CP's records stipulate that no step three appeals were submitted by Plaintiff between February 1, 2016 and September 22, 2016. (Docket Entry 56; Yelverton Aff. ¶ 11.) Even if Plaintiff wanted to appeal at this point in the proceeding, "he may not exhaust (or attempt to exhaust) his administrative remedies during the pendency of a lawsuit." *Thomas v. Slater*, No. CA 9:10–0028–DCN–BM, 2010 WL 4822407, at *3 (D.S.C. Nov. 3, 2010) (unpublished), *report and recommendation adopted*, No. CA 9:10–0028 DCN, 2010 WL 4823071 (D.S.C. Nov. 22, 2010) (citation omitted); *see Cambron v. Harris*, CIV.A. 3:11-326-RMG, 2012 WL 1579580, at *3 (D.S.C. Apr. 11, 2012), *report and recommendation adopted*, CIV.A. 3:11-326-RMG, 2012 WL 1579497 (D.S.C. May 4, 2012); *see also Seamons v. Guise*, No. 3:16–CV–649–FDW, 2017 WL 190101, at *2 (W.D.N.C. Jan. 17, 2017) (unpublished) ("The law is settled that a plaintiff must exhaust administrative remedies before filing a claim, and a prisoner is not entitled to exhaust administrative remedies during the pendency of an action."). Having failed to exhaust his administrative remedies by completing all three steps required by the ARP, Defendant's motion for summary judgment should be granted.

## C. Defendants Metiko, Christopher, and Siao's Motion to Dismiss Plaintiff's Complaint

Defendants Metiko, Christopher, and Siao's move for a motion to dismiss as to Plaintiff's 42 U.S.C. § 1983 claim. (Docket Entry 49 at 21-33.) Defendants argue that the motion to dismiss should be granted because: (1) Defendants are entitled to Eleventh

Amendment sovereign immunity; (2) as to any alleged state law medical malpractice claim, Plaintiff has failed to comply with the pleading requirement of rule 9(j) of the North Carolina Rules of Civil Procedure; (3) Plaintiff failed to plead facts that set a plausible claim for deliberate indifference to a serious medical need against Defendants Christopher and Siao; (4) Defendants Christopher and Siao are entitled to qualified immunity. (*Id.*)

## Eleventh Amendment

Defendants Metiko, Christopher, and Siao argue that Plaintiff's § 1983 monetary claim against them in their official capacity is barred by Eleventh Amendment sovereign immunity. (Docket Entry 49 at 21–22.) The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Lilly*, 1:16CV400, 2017 WL 3017704, at *5; *see also Ballenger v. Owens*, 352 F.3d 842, 844–45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted); *see also Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity."). Additionally, compensatory damages are unavailable in official capacity suits under § 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Here, a suit against Defendants Metiko, Christopher, and Siao in their official capacity is a suit against NCDPS and North Carolina.

Neither has consented nor waived immunity; therefore, any monetary claims against Defendants Metiko, Christopher, and Siao in there official capacity should be dismissed.

<u>Requirements of Rule 9(j)</u>

Defendants Metiko, Christopher, and Siao argue that Plaintiff's medical malpractice claim, to the extent alleged, fails because he did not obtain an expert review of "the medical care and all medical records" before filing a lawsuit. (Docket Entry 49 at 22-25 (citing N.C. Gen. Stat. § 1A–1, Rule 9(j).)) As discussed above, Plaintiff's assertion of himself as an expert witness fails to comply with Rule 9(J). (Docket Entry 2 at 60-61 referencing Docket Entry 2 at 81-82.) To the extent Plaintiff asserts a state law claim for medical malpractice against Defendants Metiko, Christopher, and Siao, the motion to dismiss should be granted.

<u>Deliberate Indifference</u>

As Defendants Christopher and Siao correctly assert, Plaintiff has failed to state a claim of deliberate indifference as to a serious medical need. (Docket Entry 49 at 25-30.) It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Lilly*, 2017 WL 3017704, at *3 (M.D.N.C. July 14, 2017); *see also Estette*, 429 U.S. at 105. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson*, 195 F.3d at 695. Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the

official action must have recognized that his actions were insufficient.

*Parrish ex rel. Lee*, 372 F.3d at 303. "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson*, 963 F.2d at 853.

To constitute deliberate indifference to a serious medical need, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Thus, "mere negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmates proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849. It is well settled, therefore, that a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832–33. Further, the refusal by a medical professional to give an inmate any prescribed pain medication can, in some instances, amount to deliberate indifference. *Carter*, 2014 WL 3421515, at *3. Also, under the Eighth Amendment a delay in treatment does not rise to the level of deliberate indifference unless the delay resulted in substantial harm to the patient. *Williams v. Miles*, CIV.A. 2:08-0042, 2009 WL 2044679, at *2 (S.D.W. Va. July 7, 2009); *see also Webb v. Hamidullah*, 281 Fed. Appx. 159, 166 (4th Cir. 2008).

*Defendant Christopher*

In this case, Plaintiff's own allegations demonstrate that Defendant Christopher was not deliberately indifferent to Plaintiff's medical needs and did not cause him injury. Plaintiff alleges that on August 8, 2016, Defendant Christopher, physician assistant, rewrote Plaintiff's

medication regimen and how "they are [sic] given[.]" (Docket Entry 2 at 49-50.) Indeed, Plaintiff's own allegations imply that he received medication. *Carter*, 2014 WL 3421515, at *3. Moreover, Plaintiff received medication and does not allege any injury that arose from the new regimen, thus Defendant Christopher's conduct did not amount to deliberate indifference. *Carter*, 2014 WL 3421515, at *3. Even if Plaintiff had alleged an injury, federal courts have determined that failure of prison medical personnel to issue inadequate pain medication does not constitute deliberate indifference, unless malicious intent is shown. *Parker v. Burris*, No. 1:13CV488, 2015 WL 1474909, at *7 (M.D.N.C. Mar. 31, 2015), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015).

Second, Plaintiff alleges that Defendant Christopher was involved in Plaintiff being placed "in a 24 hour a days [sic], 7 day a week lock-down for being sick." (Docket Entry 52 at 13 referencing Docket Entry 2 at 64.) However, Plaintiff alleges that "on 26th August, 2016, P.A. Christopher came into cell for approximately, 2 minutes to tell me that she issued walking order, since lying in bed for the past approximately 1 month is not good for my health." (*Id.* at 51.) These allegations show Defendant Christopher was not deliberately indifferent. *Gibson*, 963 F.2d at 853. In addition, Plaintiff indicates that he is objecting to the "1 month" delay in receiving the walking order. (Docket Entry 2 at 51.) According to Plaintiff, he first met Defendant Christopher on August 5, 2016 (*id.* at 49), and she issued the walking order on August 26, 2016, which does not demonstrate deliberate indifference. (*Id.* at 51.); *Williams*, 2009 WL 2044679, at *2; *see also Samonte v. Bauman*, 264 Fed. Appx. 634, 635 (9th Cir. 2008)("delay of more than two years before cataract surgery did not amount to deliberate indifference where inmate saw doctors to monitor his condition"). Also, Plaintiff does not

specifically allege the substantial harm caused by the delay of three weeks in treatment. *Id.* Therefore, Plaintiff's objection lacks merit.

*Defendant Siao*

As to Defendant Siao, she argues that Plaintiff provides no specific factual allegations as to her conduct. (Docket Entry 49 at 9.) Plaintiff argues that Defendant Siao along with other Defendants violated his constitutional rights by:

> (1) Exercising deliberate indifference to his serious medical needs; (2) for failure to supply and administer [sic] comprehensive healthcare equivalent to that available in the community (N.C.D.P.S. Policy); (3) failure to follow doctors orders; and (4) continued failure to administer [sic] healthcare equivalent in the community

(*Id.*)

As noted above, Plaintiff's claims rest on four different allegations. Specifically, Plaintiff's allegations indicate that Defendant Siao is a nurse and is "responsible for the day – to – day operations of medical services at C.P.R.M.C." (Docket Entry 2 at 7.) However, Plaintiff does not state any specific conduct on the part of Defendant Siao's that rose to the level of "obduracy or wantonness[.]" *Gibson*, 963 F.2d at 853. In addition, Plaintiff failed to allege how the constitutional violations led to injury or a serious risk of harm to him. *Farmer*, 511 U.S. at 832–33. These conclusory allegations, therefore, are not sufficient to state a claim against Defendant Siao for deliberate indifference.

<u>Qualified Immunity</u>

Defendants Christopher and Siao argue that they are entitled to qualified immunity[3] from Plaintiff's action where he has failed to allege a constitutional violation. (Docket Entry

---

[3] Defendant Metiko will assert the defense of qualified immunity in a future pleading.

49 at 31-32.) Under the doctrine of qualified immunity, Defendants Christopher and Siao are "generally shielded from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lilly*, 2017 WL 3017704, at *5; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Unless the plaintiff's allegations state a claim of violation of clearly established law, defendant[s] pleading qualified immunity [are] entitled to dismissal before the commencement of discovery." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (citation omitted); *see also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) ("Qualified immunity may be raised in a motion to dismiss."). In the instant case, having found that Plaintiff has not stated a claim for a constitutional violation, Defendants Christopher and Siao should be entitled to qualified immunity. *See Jackson v. Holley*, 666 Fed. Appx. 242, 244–45 (4th Cir. 2016) (noting that the "conduct about which [plaintiff] complains [did] not amount to an Eighth Amendment [violation]," thus "[defendant] was entitled to qualified immunity and her motion to dismiss should have been granted by the district court.").

<u>Punitive Damages</u>

Last, Defendants Christopher and Siao assert that Plaintiff's claim for summary judgment as to punitive damages should be denied. (Docket Entry 49 at 32–33.) The Court first notes that Plaintiff "is not entitled to monetary damages under § 1983 against Defendant[s] [Christopher and Siao] in [their] official capacit[ies]." *Bynum*, 2017 WL 3578698, at *5; *see also Moneyhan v. Keller*, 563 Fed. Appx. 256, 258 (4th Cir. 2014). Moreover, to the extent damages are available in an individual capacity, the conduct must be such that it "involves 'reckless or callous indifference to the federally protected rights of others,' as well

as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)

Furthermore, "[t]he callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim[.]" *Id.* Having found no conduct of "evil intent" or reckless indifference, Plaintiff is not entitled to punitive damages. *Cooper*, 814 F.2d at 948.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant Gregory's D. Haynes's motion to dismiss for failure to state a claim (Docket Entry 39), and Defendants Metiko, Christopher, and Siao's motion for summary judgment solely addressing Plaintiff's failure to exhaust available administrative remedies and motion to dismiss Plaintiff's complaint (Docket Entry 46) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

October 30, 2017
Durham, North Carolina